Derek Brown
Utah Attorney General
David N. Wolf (6688)
Keith W. Barlow (15532)
Jorden W. Truman (19718)
Jason Dupree (17509)
Assistant Utah Attorneys General
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (385) 584-6509
dnwolf@agutah.gov
kwbarlow@agutah.gov
jwtruman@agutah.gov
jndupree@agutah.gov

*Counsel for Defendants*

Heather Chestnut (6934)
Assistant Utah Attorney General
Telephone: (385) 584-6509
hchesnut@agutah.gov

*Counsel for Utah Department of Corrections*

Stephanie Saperstein (5541)
Mollie Mcdonald (8589)
Assistant Utah Attorneys General
Telephone: (385) 584-6509
stephaniesaperstein@agutah.gov
mlmcdonald@agutah.gov

*Counsel for Utah Department of Health and Human Services*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| VIRGINIA TUCKER, STEPHANIE DOMBROSKI, SANDY PHILLIPS, DAKOTA GRUNWALD, and AMBERLI K. MORRIGAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>UTAH DEPARTMENT OF CORRECTIONS; JARED GARCIA, EXECUTIVE DIRECTOR OF THE UTAH DEPARTMENT OF CORRECTIONS, *in his official capacity*; SHARON D'AMICO, WARDEN OF THE UTAH STATE CORRECTIONAL FACILITY, *in her official capacity*; UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES; TRACY GRUBER, EXECUTIVE DIRECTOR OF THE UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES, *in her official capacity*; DR. STACEY BANK, EXECUTIVE MEDICAL DIRECTOR OF CLINICAL SERVICES | **DEFENDANTS' OBJECTIONS TO PLAINTIFFS' REQUEST TO PRESENT TESTIMONY AT THE PRELIMINARY INJUNCTION HEARING**<br><br>Case No. 2:25-cv-01108<br><br>Honorable Judge Tena Campbell |

| UTAH DEPARMENT OF HEALTH AND HUMAN SERVICES, *in her official capacity*; *and* DR. MARCUS WISNER, DIRECTOR OF CORRECTIONAL HEALTH SERVICES, UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES, *in his official capacity*. <br><br> *Defendants*. | |

On April 1, 2026, this Court denied Plaintiffs' three motions for writs of habeas corpus ad testificandum ("Writs") without prejudice ("Order") and allowed time for Defendants to object to the motions. (*See* ECF No. 79.) Plaintiffs' Writs demonstrate Plaintiffs intent to have Plaintiffs Ms. Dombroski, Ms. Phillips, and Ms. Tucker ("PI Plaintiffs") provide live, direct testimony at the preliminary injunction hearing ("Hearing"). Plaintiffs reiterated this desire to provide live, direct witness testimony at the Hearing during the parties' meet and confer conducted on April 6, 2026 ("Apr. 6-M&C"). Plaintiffs have also asked this Court for an order that these inmates be exempted from security procedures regarding clothing and security restraints.

As permitted by this Court's Order, Defendants respectfully object to Plaintiffs' request that the PI Plaintiffs be afforded time to testify at the Hearing. Although the Court noted in its Order that it "agrees that the testimony of these Plaintiffs will likely be helpful and is inclined to allow all parties to present any evidence or argument," the Court expressly conditioned such testimony on the evidence or argument being "relevant to the issues before the court." (Order at 2.) At the least, this means that such testimony should make some aspect of the issues before this Court more or less likely. However, the issues before the Court are legal and not factual. Therefore, the relevance of PI Plaintiffs' testimony is marginal at best.

If this Court determines that PI Plaintiffs' testimony is relevant, PI Plaintiffs' testimony should be remote. This Court has not noted any deficiencies or concerns with remote testimony, and this option permits more efficient use of time while amply providing for PI Plaintiffs' testimony. It also significantly reduces security risk and cost.

1

Finally, in the event that this Court orders PI Plaintiffs' transported to the courthouse, Defendants strongly object to their request to wear civilian clothing and be exempted from security restraints. This Court has indicated that "the Marshals are best equipped to make these decisions" and the Court will defer to their judgment. (Order at 2). Defendants agree with the Marshals' assessment,[1] as the PI Plaintiffs' request for an exemption from clothing and personal restraint procedures increases security risk at the Hearing.

In sum, Defendants object to Plaintiffs' testimony and other requests based on 1) lack of relevance to the specific legal issue of deliberate indifference, 2) redundancy of live testimony when coupled with existing declarations, 3) transport safety concerns, 4) increased potential for breach of the protective order, and 5) the unnecessary creation of security risk without countervailing testimonial value.

## I.    Providing Testimony at the Hearing is Irrelevant and Unnecessary Because the Issues Before the Court are Legal, Not Factual

This Hearing is set for the purpose of presenting argument on three motions: Defendants' Motion to Dismiss[2] and Motion for Summary Judgment,[3] and Plaintiffs' Motion for Preliminary Injunction.[4] This is the first substantive hearing in this matter. All the Motions present legal, not factual, issues.

---

[1] In correspondence with the Court on April 6, 2026, the U.S. Marshals Service stated that "[a]ll in-custody inmates who are currently remanded or serving a sentence and are required to appear in federal court in the District of Utah shall do so in full restrains and in jail or prison attire."

[2] ECF No. 54.

[3] ECF No. 55.

[4] ECF No. 35.

Under Rule 12(b)(6), a Motion to Dismiss is decided under the *Iqbal-Twombly* standard which requires the court to assume the truth of well-pleaded facts and draw reasonable inferences in a light most favorable to the plaintiff. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Therefore, no questions of fact are at issue for purposes of this motion, only questions of law.

The same is true regarding Defendants' Motion for Summary Judgment. This Motion presents a limited question of law regarding whether Plaintiffs exhausted their administrative remedies pursuant to the Prisoner Litigation Reform Act. Although documentation regarding Plaintiffs' engagement with the UDC grievance procedure is relevant, the issue of exhaustion is legal and not factual.

Finally, Plaintiffs Motion for Preliminary Injunction is based on legal argument that following H.B. 252 triggers the violation of Plaintiffs' Eighth Amendment rights, and does not present direct factual questions for this Court to determine. Plaintiffs request that the Court enjoin a validly enacted state law prohibiting administration of hormone therapy and order that Defendants provide hormone therapies because Plaintiffs allege they are constitutionally entitled to the same, among other things. But the Tenth Circuit has repeatedly ruled, under settled law controlling this case, that an inmate with gender dysphoria is not entitled to hormone therapies. Thus, this Court's decision turns on legal standards and binding appellate decisions, not disputed personal narratives.

Defendants' Opposition to the PI Motion ("Opposition") explains that under binding Tenth Circuit precedent an inmate with gender dysphoria is not constitutionally entitled to

3

receive hormone therapy or any specific preferred treatment, and disagreement about medical treatment cannot constitute deliberate indifference. (*See* ECF No. 82 at 16–25.) Further, Defendants' Opposition identifies Tenth Circuit law showing that courts defer to legislatures and prison officials when treatment decisions involve medical controversy, competing medical judgments, or risks associated with disputed interventions. (*See id.*) Indeed, the Tenth Circuit has repeatedly held that administration of any medically accepted treatment, even if different from what an inmate wants, defeats deliberate-indifference claims. (*See id.*) And Defendants' Opposition shows that disagreements over hormone therapy reflect national and international controversy, and such disagreements preclude findings of constitutional violations. (*See id.*)

Because the issues are legal, any factual disputes (even if they exist) do not alter the outcome. Courts defer to prison officials where medical judgments involve controversy or debate, and thus the Court's determination of the likelihood of success on the merits is legal, not testimonial. Accordingly, Plaintiffs' proposed testimony does not bear on controlling legal standards. Their personal experiences or subjective beliefs cannot alter the legal conclusion that disputed, controversial, or non-preferred treatments do not create an Eighth Amendment violation.

Relatedly, according to Plaintiffs' representations in a meet-and-confer on March 24, 2026 ("Mar. 24-M&C"), in email communication to Defendants' counsel on March 30, 2026 ("Mar. 30-email"), and in the Apr. 6-M&C, Plaintiffs also seek to have their expert witnesses provide live, direct testimony at the Hearing. To the extent Plaintiffs still intend to do so, Defendants object to that on the same basis as identified above. Expert testimony beyond the declarations in the briefing would not assist the Court with a purely legal question. The analysis

under Tenth Circuit precedent focuses on existing law, statutory authority, and medical controversy, not competing expert opinions.

## II.   Providing Testimony at the Hearing is Irrelevant and Unnecessary Because Plaintiffs Have Already Submitted Declarations

Plaintiffs have already submitted detailed declarations with their PI Motion. Any relevant testimony from the Plaintiffs themselves should already appear in those declarations. Courts routinely admit declarations into evidence in lieu of live testimony for preliminary injunction proceedings. This Court should do the same thing here. It would be redundant and a waste of judicial resources for Plaintiffs to simply testify as to the contents of those declarations at the Hearing.

Based on Mar. 24-M&C, Mar. 30-email, and Apr. 6-M&C, Plaintiffs intend to provide live, direct testimony at the Hearing exceeding the scope of testimony contained in their declarations. At the Apr. 6-M&C, Defendants' counsel asked Plaintiffs' counsel to outline the scope of Plaintiffs' live testimony, but Plaintiffs' counsel refused to provide that information. If Plaintiffs testimony is crucial, necessary, and relevant it would already be included in their declarations. If Plaintiffs intend to elicit and introduce additional testimony, beyond that which is contained in their declarations, Defendants would be prejudiced because they are unaware as to what surprise testimony Plaintiffs will offer at the Hearing. Accordingly, having Plaintiffs testify at the Hearing is irrelevant, unnecessary, and potentially prejudicial.

As before, to the extent Plaintiffs also seek to have the parties' expert witnesses provide live, direct testimony at the Hearing, Defendants object to that on the same basis. Expert testimony beyond the declarations is unnecessary and not the best use of time at the Hearing.

III.     **If the Court Allows Plaintiffs to Testify at the Hearing, Such Testimony Should be Provided Through Remote/Virtual Means, Confined to Specific Narrow Issues, and Defendants Should Be Given an Opportunity to Conduct Limited Discovery**

If the Court Orders that Plaintiffs can provide direct testimony at the Hearing, such testimony should be given via remote electronic means. First, remote technology is clearly available, reliable, and is being used by courts across the country (including this Court) daily. The UDC video conferencing system is used extensively for inmates to make court appearances of all types, including significant court appearances.[5] It has been used to facilitate inmate testimony in civil hearings and trials, to allow inmates to participate in court proceedings such as child custody hearings, and even to make some mandatory criminal court appearances.[6] There is no reason why Plaintiffs couldn't provide their testimony by electronic means in the same manner as could be given in-person.[7]

Second, transporting incarcerated individuals creates security risks and requires significant involvement and resources.[8] In fact, transporting an inmate is one of the most dangerous responsibilities of prison personnel. Escapes, attempted escapes, assaults, and other violent occurrences, including fatalities, have occurred during transport.[9] Transportation requires

---

[5] *See* Declaration of Brian Kenney, Chief of Safety, Risk and Standards ("Kenney Declaration"), attached hereto at Exhibit A.

[6] *See id.*

[7] During the April 6-M&C, Plaintiffs' counsel expressed concern about being able to effectively communicate with their clients during the proceedings if Plaintiffs were to testify remotely. This concern is unfounded, as the Department of Corrections will permit counsel access to Plaintiffs during the proceedings. Moreover, Plaintiffs are represented by multiple counsel, allowing one attorney to be at the prison while other attorneys appear in the courtroom.

[8] *See* Kenney Declaration.

[9] *See id.*

a contingent of specially-trained transport personnel, at least one security vehicle, and detailed planning.[10] Accordingly, the UDC does not transport inmates to civil court appearances free of charge.[11] Inmates wishing to attend civil court dates in person are charged a variable cost per day for transport.[12] Virtual appearances eliminate these expenses, burdens, and risks and facilitate compliance with security protocols.

### IV.    Plaintiffs' Testifying Increases the Risk of Privacy Breaches of Confidential Medical and Mental Health Information Without Providing Helpful, Relevant Information on the Issues at the Center of this Hearing

Importantly, a Modified Protective Order ("PO") exists in this case governing many of the medical records and related materials. This PO, binding on both parties, significantly limits disclosure of GRAMA-restricted information, confidential inmate medical and mental-health records, controlled documents and policies, materials designated ATTORNEYS' EYES ONLY, information about a specific Plaintiff that cannot be disclosed under law to the other Plaintiffs, and materials about a specific Plaintiff that cannot be disclosed even to the specific Plaintiff discussed in the document. Virtual testimony would allow Plaintiffs to be temporarily removed from the video/audio feed when such material is discussed. This would provide for protection of non-public, confidential, or GRAMA-protected information without constantly halting in-person proceedings by the time-consuming process of requiring physical removal from the courtroom.

Notably, during an Apr. 6-M&C, Defendants asked Plaintiffs if they were willing to compromise on having Plaintiffs testify in-person, with the intent of exploring the possibility of

---

[10] *See id.*

[11] Civil proceedings differ from criminal in that a "prisoner does not have an absolute right to be present at his civil trial or pretrial proceedings." *Hawkins v. Maynard,* 1996 WL 335234, * 1 (10th Cir. June 18, 1996) (unpublished).

[12] *See* Kenney Declaration.

some sort of agreement, which would include remote testimony. Plaintiffs unequivocally stated that in-person testimony was non-negotiable. Plaintiffs' insistence on in-person appearance, despite remote options and security concerns, underscores the need for Court-imposed limitations.

Finally, in the event Plaintiffs are allowed to testify in-person at the Hearing despite availability of a far less burdensome remote alternative, the Utah Department of Corrections should not have to bear the costs, including transport, associated with an in-person appearance.

## V.    The Court Should Allow Defendants to Conduct Limited Discovery Prior to the Hearing.

In addition, if Plaintiffs are allowed to provide testimony at the Hearing, Defendants should be allowed to conduct limited discovery, including deposing Plaintiffs,[13] if necessary, to determine what testimony beyond the declarations Plaintiffs intend to provide at the Hearing. At minimum, Plaintiffs should identify precisely what testimony they intend to offer beyond the declarations, what finite issues that testimony pertains to, and explain why such was not included in Plaintiffs' declarations.

## VI.    Providing Inmates with Civilian Clothing Away from the Facility and Allowing Them an Exception from Security Restraints Creates Unnecessary Security Risk

If PI Plaintiffs are transported to the courthouse, the security risk already extant will substantially increase if they are given civilian clothing and receive an exception from security restraints, and there is no necessity for this. This court has indicated that it "will listen carefully to everything the witnesses have to say regardless of how they are dressed." (Order at 2).

---

[13] Because Plaintiffs are incarcerated, scheduling these depositions in advance of the Hearing does not present significant scheduling concerns.

Further, as this Court has noted, "The hearing is for a civil, not a criminal matter, and there will be no jury present." (Order at 2). So, there is no appreciable reason for PI Plaintiffs' request for a deviation from security procedures. Further, the U.S. Marshals agree with this analysis. (*See supra* at n.1.)

Although it is well-settled that there is a substantial risk of fundamental unfairness in a criminal trial when a defendant appears before a jury in identifiable prison garb, *State v. Bennett*, 2000 UT 34, ¶ 3, 999 P.2d 1 (citing *Chess v. Smith*, 617 P.2d 341, 344 (Utah 1980) (emphasis added)), the same is not true of a proceeding before the bench. *See State v. Cravens*, 2000 UT App 344, ¶ 17, 15 P.3d 635 ("[T]he rationale behind the Utah Supreme Court's decision in *Bennett* cannot logically be applied to bench trials. Accordingly, we find no error on the part of the trial court in failing to require a waiver as to defendant's appearance at trial in prison clothes.") That is because, when a hearing does not involve a jury, the defendant's attire will convey "no information not already known to the court …." *Cravens*, 2000 UT App 344, ¶ 17. And so, no prejudice or unfairness attaches.

The same reasoning applies to PI Plaintiffs' request for an exception from personal restraints. A "criminal defendant is generally entitled to the physical indicia of innocence" before the jury, including the "right to be tried without being shackled, chained, bound, handcuffed, gagged, or otherwise physically restrained." *State v. Mitchell*, 824 P.2d 469, 473 (Utah Ct. App. 1991) (*citing Estelle v. Williams*, 425 U.S. 501 (1976)). However, this right does not extend to those appearing before judges, who are "presumably less likely than a jury to be prejudiced by evidence of prior crimes, wrongs, or acts." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989). Further, it is the presumption of innocence that leads to civilian clothing and an exemption from

9

personal restraints for an inmate. However, "[w]here the defendant has already lost the presumption of innocence, it is within the sound discretion of the trial court to determine the safety measures necessary to insure the security of the courtroom and its occupants." *State v. Young*, 853 P.2d 327, 350 (Utah 1993).

Here, PI Plaintiffs have already lost the presumption of innocence by virtue of their convictions and have been sentenced. The matter before the Court is not about guilt or innocence. Instead, this is a civil case where their status of being incarcerated is not only known to the Court, but essential to their case. In this circumstance, there is no risk of prejudice to the inmates, and the greater interest is in the safety measures necessary to ensure the security of the courtroom and its occupants.

## CONCLUSION

Defendants respectfully request that the Court Sustain Defendants' objections and deny Plaintiffs' request to present irrelevant and unnecessary testimony at the Hearing, including testimony by Plaintiffs and testimony by the parties' expert witnesses. In the alternative, Defendants request that the Court require Plaintiffs to testify remotely. Moreover, if Plaintiffs' testimony is not limited to material already disclosed in Plaintiffs' declarations, Defendants should be allowed to conduct limited discovery, including pre-Hearing depositions. If the Court orders in-person testimony by Plaintiffs, Defendants request that the Court order Plaintiffs to pay all costs involved in transporting Plaintiffs to and from the Hearing. Defendants also request that this Court deny PI Plaintiffs' request for an exemption from security procedures.

DATED:  April 8, 2026.

Derek Brown
Utah Attorney General

*/s/ Keith W. Barlow*
DAVID WOLF
KEITH W. BARLOW
JORDEN W. TRUMAN
JASON DUPREE
Assistant Utah Attorneys General
Counsel for Defendants

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, the foregoing, *DEFENDANTS' OBJECTIONS TO PLAINTIFFS' REQUEST TO PRESENT TESTIMONY AT THE PRELIMINARY INJUNCTION HEARING,* was filed using the Court's electronic filing system, which gave notice to the following:

Abigail Julia Cook
ACLU OF UTAH
311 S STATE ST
SALT LAKE CITY, UT 84103
801-871-8926
Email: acook@acluutah.org
*Attorney for Plaintiffs*

Jason Michael Groth
311 S STATE ST STE 310
SALT LAKE CITY, UT 84111
563-419-4261
Fax: 801-532-2850
Email: jgroth@acluutah.org
*Attorney for Plaintiffs*

Thomas Ford , Jr.
AM CIVIL LIBERTIES UNION OF
UT FOUNDATION
311 S STATE ST STE 310
SALT LAKE CITY, UT 84111
801-521-9862
Email: tford@acluutah.org
*Attorney for Plaintiffs*

David W. Tufts
DENTONS DURHAM JONES
& PINEGAR PC
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110-4050
801-415-3000
Fax: 801-415-3500
Email: david.tufts@dentons.com

Correction Section (FYI)
UTAH ATTORNEY GENERAL'S OFFICE
LITIGATION UNIT
160 E 300 S 6TH FL
PO BOX 140856
SALT LAKE CITY, UT 84114-0856
(801)366-0100
Email: inmateissues@agutah.gov
*Party to be Noticed*

Prisoner Litigation Unit
US District Court, District of Utah
utdecf_prisonerlitigationunit@utd.uscourts.gov
*Party to be Noticed*

*/s/ Mariann Christesen*
Mariann Christesen
Legal Assistant

12